Donna J. WOODSIDE, Administratrix of
the Estate of Henry William Schroeder,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 77–3276.

United States Court of Appeals,
Sixth Circuit.

Argued April 4, 1979.

Decided Sept. 20, 1979.

Harry L. Riggs, Jr., H. Lawson Walker, II, Riggs & Riggs, Erlanger, Ky., for plaintiff-appellant.

Griffin Bell, Atty. Gen. of the U. S., Leonard Schaitman, John M. Rogers, Eloise E. Davies, Dept. of Justice, Washington, D. C., Gerald F. Kaminski, Asst. U. S. Atty., Cincinnati, Ohio, for defendant-appellee.

Before CELEBREZZE and LIVELY, Circuit Judges and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

Appellant Donna J. Woodside, administratrix of the estate of her husband, Cap-

tain Henry William Schroeder, appeals from the dismissal of her wrongful death action against the United States. Captain Schroeder, an active duty officer in the Air Force, was killed in an airplane crash while he was receiving flight instruction toward a commercial pilot's license. Appellant filed suit in the district court under the Federal Tort Claims Act (hereinafter the FTCA or the Act), 28 U.S.C. §§ 1346(b), 2671 et seq., seeking damages for the alleged negligence of the United States. The district court concluded that, at the time of his death, Captain Schroeder was engaged in an "activity incident to [his military] service" within the meaning of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which precludes suits against the United States under the FTCA by service members or their estates. Accordingly, the district court dismissed appellant's complaint for failing to state a claim cognizable under the Act.

We affirm.

### I

The facts are not in dispute. Schroeder, who held the rank of Captain in the Air Force at the time of his death, was a civil engineer by profession. He was attached to the 6003 Support Squadron (PACAF) stationed at Hickman Air Force Base, Hawaii.

Captain Schroeder was not a military pilot, nor did his military duties require that he have a pilot's license or fly as a member of a flight crew. However, Captain Schroeder did hold a private pilot's license, which he obtained in 1972. Captain Schroeder's interest in aviation was purely personal. He obtained his license for reasons wholly unrelated to his duties in the Air Force.

Captain Schroeder was a member of the Hickman-Wheeler Air Force Base Aero Club (the Club), a non-appropriated fund

instrumentality of the United States Air Force.[1] The Club, located on Wheeler Air Force Base, was established and operates as an instrumentality of the United States under the auspices of the Air Force, pursuant to 32 C.F.R. §§ 984 et seq.[2]

Aero clubs are established "as recreational activities to promote morale" and are intended to provide their members with the opportunity to learn aviation skills under safe, low-cost conditions. 32 C.F.R. § 984.-1(a). Moreover, the Hickman-Wheeler Aero Club By-Laws provide that "[t]he purpose of the Club is to stimulate an interest in aviation; to provide . . . opportunities to engage in flying as a recreational activity; and to encourage and develop skills in aeronautics . . . ."

Membership in an aero club is limited to two basic categories of individuals. 32 C.F.R. § 984.8. Only active duty military personal of the United States Armed Forces are eligible for "active membership." 32 C.F.R. § 984.8(a). "Associate" membership is available to a wide range of military-related personnel (including families of active duty service members, civilian Department of Defense employees and their families, and members of Congress) not pertinent to this appeal. 32 C.F.R. § 984.8(b).[3] Captain Schroeder was an "active member" of the Club by virtue of the fact he was an active duty member of the Air Force.

The Club operates a Federal Aviation Administration (FAA) approved (Certificate PC–02–15) flight school. The school prepares students for the various civilian pilot's licenses issued by the FAA. The Club employs FAA certificated civilian flight instructors and charges members for flight instruction. At the time of the accident involved in this case, the Club owned a Cessna 150 (License No. N1216Q) two-seat trainer aircraft, which was used to conduct in-flight training.

---

**1.** A non-appropriated fund instrumentality is one that is not funded by Congressional appropriation. See United States v. Hopkins, 427 U.S. 123, 125 n.2, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976); Johnson v. United States, 600 F.2d 1218 (6th Cir. 1979).

**2.** At the time the parties filed their briefs in this case, the Air Force aero club regulations were published at 32 C.F.R. §§ 861 et seq.

**3.** A third category, introductory membership, may be temporarily extended to an individual otherwise eligible for active or associate membership. 32 C.F.R. § 984.8(c).

On April 16, 1973, Captain Schroeder went on a five day leave from the Air Force. Schroeder's "leave" was equivalent to civilian vacation time, and could be withdrawn only for a "military necessity." A.F.M. 177–373, vol. III(C)(2), para. 1–1–c (1 Oct. 1976). Captain Schroeder was not scheduled to return to duty until April 21, 1973.

On April 19, 1973, at approximately 9:05 local time, Captain Schroeder and Gordon Hanna, a certified civilian flight instructor employed by the Club, departed from Wheeler Air Force Base in the Club's Cessna 150 for the purpose of flight instruction. Captain Schroeder had paid the Club for the instruction and was working toward a "commercial" pilot's license. During the course of the flight the aircraft crashed, fatally injuring both Schroeder and Hanna. The crash occurred on Oahu island, Hawaii, approximately five miles south of Wheeler Air Force Base.

## II

After having exhausted her administrative remedies, appellant filed suit in the district court against the United States for the wrongful death of her husband, pursuant to the FTCA, 28 U.S.C. §§ 1346(b)[4] and 2674.[5] In substance, appellant alleged in her complaint that the cause of the accident that killed Captain Schroeder was the negligence, carelessness, and recklessness of Gordon Hanna, an employee of the United States, while acting as the pilot-in-command and flight instructor.

**4.** Section 1346(b) provides, in pertinent part: [T]he United States District Court . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

**5.** Section 2674 provides, in pertinent part:

In response, the United States moved to dismiss the complaint, pursuant to Fed.R. Civ.P. 12(b)(6), on the ground that *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), precluded suit by a member of the Armed Forces against the United States. The government argued that Captain Schroeder was killed "in the course of activity incident to [military] service" within the meaning of *Feres* and was thus barred from suing under the FTCA.

Initially, the district court denied the motion to dismiss. Subsequently a hearing was ordered limited to the question of whether the facts of the present case supported application of the *Feres* doctrine. At that hearing, appellant testified that her husband's flying was not connected with his military duties, that his interest in aviation was recreational, and that she was receiving military compensation benefits as the result of Captain Schroeder's death. Captain Mark S. Anderson of the Judge Advocate General's office testified that, in his opinion, Captain Schroeder was subject to military control while on leave and was killed while engaging in an activity incident to service. Captain Anderson also testified that appellant was receiving military compensation benefits as the result of Captain Schroeder's death.

Following the hearing, the district court reconsidered its initial ruling and dismissed the action. Although holding that Captain Schroeder was not "subject to military discipline" at the time of his death, the district court nevertheless concluded that his activi-

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

ty was incident to his military service within the meaning of *Feres*. The court reached this conclusion on the basis of three factors: (1) that off-duty recreational activities provided by the Armed Forces or provided through a non-funded instrumentality of the Armed Forces are incident to military service; (2) that Captain Schroeder's flight originated and would have ended at the on-base aero club; and (3) although not dispositive, the government regulations required covenants not to sue to be executed by associate (but not active) club members, indicating an expectation that *Feres* would apply to active club members. This appeal followed.

### III

The FTCA provides that the United States shall be liable for "injury or . . . death caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant . . . ." 28 U.S.C. § 1346(b). The Act "waives the Government's immunity from suit in sweeping language." *United States v. Yellow Cab Co.,* 340 U.S. 543, 547, 71 S.Ct. 399, 402, 95 L.Ed. 523 (1951). However, this broad waiver of immunity is not without its exceptions. *See generally*, Gottlieb, *The Federal Tort Claims Act—A Statutory Interpretation*, 35 Geo.L.J. 1 (1946). The Act itself excludes certain types of government action from judicial review. 28 U.S.C. § 2680. Moreover, the Supreme Court has recognized that because Congress did not waive completely all government immunity, "it [the FTCA] does not say that all claims must be allowed." *Feres v. United States*, 340 U.S. 135, 141, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950). It therefore remains for the courts to determine whether any particular claim is cognizable under the Act. *Id.*

■ In *Feres*, the Supreme Court recognized an exception to the government's tort liability where military service members sue the United States for service-connected injuries. Known as the "*Feres* doctrine," this exception provides that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen *where the injuries arise out of or are in the course of activity incident to service."* (Emphasis added). *Id.* at 146, 71 S.Ct. at 159. In *Feres* the executrix of the estate of a serviceman who was killed in a barracks fire attempted to recover damages from the United States on the theory that the military had negligently quartered the decedent in a dangerous facility.[6] A unanimous Court held that the FTCA did not apply to service members who sustain injuries "incident [to their military] service" despite the fact that those injuries may have been negligently inflicted.

The Supreme Court relied upon several factors in finding an exception to the FTCA, including: (1) the "distinctly federal" relationship between the United States and members of the Armed Forces, requiring that federal law, and not state law, determine the liability of the government; (2) the fact that no private liability parallel to that asserted by the service members existed at common law; and (3) the existence of a "simple, certain and uniform" system of compensation in the Veterans' Benefit Act, which provides generous benefits without regard to fault. *Id.* at 141–44, 71 S.Ct. 153.

**6.** Decided along with *Feres* were *Griggs v. United States*, 178 F.2d 1 (10th Cir. 1949), *rev'd sub nom., Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) involving a wrongful death action based upon the alleged medical malpractice of Army surgeons, and *Jefferson v. United States*, 178 F.2d 518 (4th Cir. 1949), *aff'd sub nom., Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), also involving malpractice by an Army Surgeon who allegedly left a towel, 30 inches long by 18 inches wide, in the stomach of the plaintiff.

Because of a conflict in the circuits over whether these service members could bring suit against the United States under the FTCA, the Supreme Court agreed to review the triology of cases to resolve the issue. *Griggs, cert. granted*, 339 U.S. 951, 70 S.Ct. 840, 94 L.Ed. 1364 (1950); *Feres, cert. granted*, 339 U.S. 910, 70 S.Ct. 562, 94 L.Ed. 1337 (1950); *Jefferson, cert. granted*, 339 U.S. 910, 70 S.Ct. 562, 94 L.Ed. 1337 (1950).

An additional factor weighing against permitting service member suits under the Act, mentioned in *Feres*, was discussed in *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954). The Court stated that "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty" served as strong reasons supporting the continued immunity of the United States from such suits.

Appellant contends that in the years subsequent to *Feres* the Supreme Court has gradually narrowed the factors it relied upon in that decision in barring service member suits under the Act.[7] Appellant points out that the Supreme Court allowed the serviceman in *Brown* to sue under the FTCA even though he had previously received military compensation for his injuries. Appellant further points out that the Court, in *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), permitted federal prisoner suits under the Act by distinguishing *Feres*, commenting that "[i]n the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, . . . and the extreme results that might obtain if suits . . . were allowed for negli-

gent orders given or negligent acts committed.'" *Id.* at 162, 83 S.Ct. at 1858. Appellant argues, therefore, that *Feres* is limited to those situations where the disciplinary relationship between the soldier and his superiors is involved.[8]

Appellant seeks to limit the "incident to service" exception to the government's tort liability to those instances where the service member is injured "in the course of military duty," *Hale v. United States*, 416 F.2d 355, 358–59 (6th Cir. 1969) (*Hale I*), or "[while] subject to military discipline," *Knight v. United States*, 361 F.Supp. 708, 713 (W.D. Tenn.1972), aff'd mem., 480 F.2d 927 (6th Cir. 1973).[9] However, this court has never "attempt[ed] to effect a dramatic reinterpretation of the *Feres* doctrine," 361 F.Supp. at 713. *Hale I* and *Knight* are consistent with the decision in *Feres*.

Moreover, the Supreme Court unequivocally reaffirmed *Feres* and expanded the scope of the doctrine in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). In *Stencel* the Court relied almost exclusively upon *Feres*, together with its supporting rationale, to extend governmental immunity from suit to include third parties seeking indemnity from the United States. *See generally* Note, *Stencel Aero Engineering Corp. v. United States: An Expansion of the Feres Doctrine to Include Military*

---

7. *See also* Note, *The Supreme Court and the Tort Claims Act: End of an Enlightened Era?*, 27 Clev.St.L.J. 267 (1978); Jacoby, *The Feres Doctrine*, 24 Hastings L.J. 1281 (1973).

8. *See also* Rayonier, Inc. v. United States, 352 U.S. 315, 319, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) where the Court permitted suit under the Act even though that case involved "novel and unprecedented governmental liability" without counterpart at common law. *See generally* Jacoby, 24 Hastings L.J. at 1287, "[i]t is now generally recognized that *Feres* is a well-established but limited doctrine excluding from coverage under the Tort Claims Act military plaintiffs, broadly subject to military discipline who seek recovery for wrongs sustained 'incident to service.'"

9. Some courts have expressed the view that the Supreme Court has permitted a narrowing of the "incident to service" exception of *Feres* to situations where the service member is "per-

forming duties of such a character as to undermine the traditional concepts of military discipline," *Downes v. United States*, 249 F.Supp. 626, 628 (E.D.N.C.1965), or is engaging in an activity that "involved an official military relationship between the negligent person and the claimant," *Lee v. United States*, 261 F.Supp. 252, 256 (C.D.Cal.1966), rev'd, 400 F.2d 558, 562–64 (9th Cir. 1968), cert. denied, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969), or "has suffered what might be called a work-related injury," *Bradshaw v. United States*, 143 U.S.App.D.C. 344, 347, 443 F.2d 759, 762–63 (D.C.Cir.1971).

It should be noted that these cases were all decided before the recent Supreme Court opinion in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), and their continued validity is doubtful in light of the holding in *Stencel*.

*Contractors, Subcontractors, and Suppliers,* 29 Hastings L.J. 1217 (1978).

The plaintiff in *Stencel,* a Captain in the Missouri National Guard, was injured when the life-support system of his F–100 fighter aircraft malfunctioned. He subsequently brought suit under the FTCA against the United States and Stencel Aero Engineering, the manufacturer of the system, alleging negligence and carelessness. Stencel Aero, in turn, brought suit against the United States for indemnity, charging that any malfunction in the life-support system was due to faulty specifications and components provided by the government.

The Court held that a third-party indemnity action against the United States was barred "for essentially the same reasons that [a] direct action by [a service member] is barred by *Feres." Id.* at 673, 97 S.Ct. at 2059. The Court found that of the several factors it had considered in deciding *Feres,* three were particularly relevant to Stencel's claim for indemnity: the distinctly federal nature of a suit against the United States by a soldier, the upper limit of compensation provided in the Veterans' Benefit Act, and the effect of service member suits on military discipline. *Id.* at 671–73, 97 S.Ct. 2054. *See generally* Note, 29 Hastings L.J. at 1219–33.

The Ninth Circuit, relying upon *Stencel,* further expanded the *Feres* doctrine to bar suit by the estate of a foreign serviceman against the United States under the FTCA. In *Daberkow v. United States,* 581 F.2d 785 (9th Cir. 1978), a German serviceman had been killed while receiving flight training from an Air Force instructor, pursuant to a joint United States-Federal Republic of Germany military agreement. The court concluded that the rationale of *Feres* applied with equal force to foreign servicemen injured on American soil while engaging in joint military operations. *Id.* at 788–89.

■ Accordingly, we reject appellant's contention that the *Feres* doctrine is limited to those situations where a service member is injured or killed in the course of military duty or while subject to a direct command relationship with the Armed Forces.

IV

A service member may not sue the government for injuries "incident to service." *Feres,* 340 U.S. at 146, 71 S.Ct. 153. The Supreme Court has never specifically defined what constitutes activity incident to service. In a trilogy of cases beginning with *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), the Court has dealt with this phrase. In *Brooks,* two brothers, both active duty service members, were injured in an automobile accident. The brothers had been on military leave and were riding on a public highway when they were struck by a government vehicle. The brothers brought suit against the United States seeking damages for the negligence of the driver of the government vehicle. The Court allowed the suit, concluding that the injuries sustained by the brothers were not incident to their military service. The Court reasoned that the accident "had nothing to do with Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired." *Id.* at 52, 69 S.Ct. at 920.

In *Feres,* the Court disallowed three suits against the United States under the following circumstances: death of an active duty soldier in a barracks fire allegedly due to negligence of military personnel; death of an active duty soldier allegedly due to malpractice of Army surgeons; and injury to an active duty soldier resulting from a foreign object left in his abdomen during surgery by a military doctor.

Finally, in *Brown* the Court held that a veteran could sue under the Act for alleged negligence in treatment received at a Veteran's Hospital, resulting in permanent nerve damage to the veteran's leg. Brown, an honorably discharged serviceman, had been admitted to a government hospital for treatment of complications resulting from an incident-to-service injury. However, the Court concluded that the veteran could sue for injuries sustained in the Veteran's hospital because they were not incident to his military service.

■ The *Brooks-Feres-Brown* line of cases illustrates that the incident to service test is not easy to define and apply. What is clear from these cases, however, is that "incident to service" is not a narrow term restricted to military training, field maneuvers, or combat situations. Contrary to the contentions of appellant, the *Feres* doctrine extends beyond situations where the soldier is acting pursuant to orders or while subject to direct military command or discipline. *See generally* Rhodes, *The Feres Doctrine After Twenty-Five Years*, 18 A.F.L.Rev. 24 (Spring 1976). Thus, it has been held that a service member is engaged in an activity incident to service while swimming in an on-base swimming pool, *Chambers v. United States*, 357 F.2d 224, 229 (8th Cir. 1966); *Knight*, 361 F.Supp. at 713; riding a horse rented from a military riding stable, *Hass v. United States*, 518 F.2d 1138, 1141–42 (4th Cir. 1975); riding a bus to a military-sponsored beach party, *Degentesh v. United States*, 230 F.Supp. 763 (N.D.Ill.1964); and playing in a "donkey soft-ball game," *Keisel v. Buckeye Donkey Ball, Inc.*, 311 F.Supp. 370 (E.D.Va.1970).

■ The government contends that *Feres* applies to any service member who, at the time of injury or death, was generally subject to Article 2 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 802. We think this reading of the incident to service test extends the *Feres* doctrine too far. Although a wide range of activities have been held to be incident to service, Rhodes, 18 A.F.L.Rev. at 33–40, the *Feres* doctrine is not applied blindly. *Schwager v. United States*, 279 F.Supp. 262, 263 (E.D.Pa. 1968). In each case the result depends on the "relevant links" between the Armed Forces and the service member's activity, requiring "a measuring of the degree to which the activity is divorced from or related to military service." *Id.; Camassar v. United States*, 400 F.Supp. 894, 897 (D.Conn.1975), *aff'd*, 531 F.2d 1149 (2d Cir. 1976).

■ Whether a service member is engaged in an activity incident to service is a question of fact, *Hass*, 518 F.2d at 1141, to be determined from the circumstances of each case. It is not enough that injury or death be service-connected in that military service precede the injury-producing activity only in the sense that "all human events depend upon what has already transpired." *Brooks*, 337 U.S. at 52, 69 S.Ct. at 920. Rather, *Feres* requires that there be some proximate relationship between the service member's activity and the Armed Forces. Where the two are closely associated or naturally related, the activity will be deemed "incident to service" even though not an essential or integral part of the mission of the Armed Forces and even though not directly involving a command relationship between the soldier and the military. *See, e. g., Harten v. Coons*, 502 F.2d 1363 (10th Cir. 1974); *Henninger v. United States*, 473 F.2d 814 (9th Cir.), *cert. denied*, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973).

Conversely, where the soldier demonstrates that the activity has no significant link to the Armed Forces and is remote to his military service, suit under the Act has been allowed. *See, e. g., Brown, supra; Brooks, supra; Mills v. Tucker*, 499 F.2d 866, 868 (9th Cir. 1974).

■ Courts look to a number of factors in determining whether a particular activity is incident to service. When a service member is injured "in the line of duty," *Hale I*, 416 F.2d at 359, or "[while] engaged in the performance of an assigned military duty," *Camassar*, 531 F.2d at 1151, such has uniformly been held to be activity incident to service, irrespective of where it is performed.

■ Where a service member is subject to military discipline at the time of injury, *Feres* applies and suit is barred. *Alexander v. United States*, 500 F.2d 1, 5 (8th Cir. 1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975); *Herreman v. United States*, 476 F.2d 234, 237 (7th Cir. 1973); *Hale v. United States*, 452 F.2d 668, 669 (6th Cir. 1971) (*Hale II*). A service member is subject to military discipline where his movements or actions are under

the immediate control of military authorities. *Hale II, supra.*

■ As a general rule, an injury to an active duty service member on a military base, *Camassar,* 531 F.2d at 1151; *Chambers,* 357 F.2d at 229; *Knight,* 361 F.Supp. at 709, or while aboard military craft, *Uptegrove v. United States,* 600 F.2d 1248 (9th Cir. 1979); *Stansberry v. Middendorf,* 567 F.2d 617, 618 (4th Cir. 1978); *Herreman,* 476 F.2d at 237, or while receiving treatment at a military hospital or medical facility, *Harten,* 502 F.2d at 1364; *Peluso v. United States,* 474 F.2d 605, 606 (3d Cir.), cert. denied, 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973); *Shults v. United States,* 421 F.2d 170, 172 (5th Cir. 1969), is deemed to be incident to military service. *Contra, Bryson v. United States,* 463 F.Supp. 908, 913–14 (E.D.Pa.1978).

■ Whether the service member is an active duty member of the Armed Forces is another factor considered in determining whether an injury is service-related. Where the plaintiff is a veteran *Brown,* 348 U.S. at 110, 75 S.Ct. 141, or was discharged at the time of the injury, *Bankston v. United States,* 480 F.2d 495, 497 (5th Cir. 1973), courts are less likely to find sufficient proximity between the injury-producing activity and the military. *See also Henninger,* 473 F.2d at 816; *Lee,* 400 F.2d at 562. The duty status (off-duty, on-leave, on-furlough) of the service member, while not dispositive, is also taken into account in determining the relationship of an activity to the Armed Forces. *Brooks, supra; Henninger, supra.*

■ Finally, where an activity is provided directly by the military or where there is substantial involvement by the Armed Forces in the activity, such will be deemed incident to military service even though not essential to the mission of the military. *Hass,* 518 F.2d at 1141; *Chambers,* 357 F.2d at 229; *Keisel,* 311 F.Supp. at 370. *See generally* Rhodes, 18 A.F.L.Rev. at 36–40.

■ Viewing the present case in light of the foregoing factors, we agree with the district court that Captain Schroeder was killed while engaging in an activity incident to his military service within the meaning of *Feres.* At his death, Captain Schroeder was an active duty officer in the Air Force. By virtue of his service in the military, Captain Schroeder was able to gain membership in the Hickman-Wheeler Aero Club. The Club is a non-appropriated fund activity of the Air Force, established to promote the morale of service members. 32 C.F.R. § 984.1. The base commander has overall responsibility to supervise the activities of the Club. 32 C.F.R. § 984.2. The Club must have a Board of Governors which has a voting majority of active duty military personnel. 32 C.F.R. § 984.3. Moreover, the Board must keep minutes and submit them through the chief of special services to the base commander for approval. *Id.*

Although not supported by direct congressional appropriation, the Club's activities are supported indirectly by the Air Force in that the Club uses facilities at Wheeler Air Force Base and purchases its fuel through the Air Force. The Club is required, by Air Force regulation, to maintain certain records, 32 C.F.R. § 984.14, impose pilot maneuver restrictions, 32 C.F.R. § 984.17, require minimum flight times to maintain currency, 32 C.F.R. § 984.20, and follow a definite and standardized training program, 32 C.F.R. § 984.-21. We find this relationship between the Club and the Air Force to be direct and substantial, even though the Club is not an essential or integral part of the military mission of the Air Force.

We recognize that at the time of his death Captain Schroeder was on leave and that he was not subject to military discipline in the sense that his movements were subject to the immediate control of military authorities. Even in the absence of these factors, we find the link between the Air Force and the Club sufficient to bring Captain Schroeder's flight instructions within the realm of activities incident to his military service. Accordingly, we conclude that the district court was correct in dismissing this action as failing to state a claim cognizable under the FTCA.

Affirmed.