**Charlotte HOWELL, Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

**No. 79–2565.**

United States District Court,
W. D. Tennessee, W. D.

April 30, 1980.

Robert S. Peters, Swafford, Davis, Peters & O'Neal, Winchester, Tenn., for plaintiff.

Joe A. Dycus, Asst. U. S. Atty., Memphis, Tenn., for defendants.

## ORDER

WELLFORD, District Judge.

Plaintiff is a former enlisted woman in the United States Navy. She sought treatment of back pain from Navy physicians at the Naval Hospital at Millington Naval Air Station in this District and claims that their care of her was performed negligently. She claims that as a result of this negligence, her Navy career was irreparably damaged and she was forced to be discharged for health reasons, receiving only a 10% temporary disability award or severance pay and not medical retirement. She seeks damages from defendants, the United States and two military physicians.

Defendants have moved to dismiss the complaint under Rule 12(b), Federal Rules of Civil Procedure, essentially for failure to state a claim upon which relief can be granted. Defendants contend that relief against the United States is barred by *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and plaintiff's failure to file an administrative claim as required by 28 U.S.C. §§ 2401(b) and 2675(a); and that relief against the individual military doctors is barred by 10 U.S.C. § 1089. Plaintiff has opposed the motion, apparently conceding defendants' point as to *Feres* but arguing that 10 U.S.C. § 1089 can be interpreted so as to provide her a remedy.

The Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*, (FTCA), waived the federal government's immunity from suit except in certain instances. It provides that the United States shall be liable for torts committed by its employees as if it were a private person. 28 U.S.C. § 1346(b). The FTCA itself sets out certain exceptions to the waiver of immunity, and others have been established judicially. One of the chief judicially-recognized exceptions was propounded in *Feres v. United States, supra.* In *Feres*, the Supreme Court held that

"the government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. *Feres* was premised primarily on three factors: 1) the "distinctly federal" relationship between the United States and members of the armed services, requiring that federal law rather than state law determine the government's liability; 2) the fact that no private liability parallel to that asserted by the service members existed at common law;[1] and 3) the existence of a "simple, certain and uniform" system of compensation provided administratively for veterans without regard to fault. *Id.*, at 141–144, 71 S.Ct. at 156–158; *Woodside v. United States*, 606 F.2d 134, 138 (6th Cir. 1979) (appeal pending).

Later decisions, particularly *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), and *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), have emphasized the factor of military discipline inherent in the rationale of the *Feres* doctrine. Interpreting the "incident to service" qualification needed to invoke *Feres* is required in this case. Where military personnel are engaged in activities that involve a command relationship or are essentially related to the mission of the armed services, suits are clearly barred under *Feres*. Where, however, the serviceman's injury occurred under circumstances that bore little military connection—*e. g.*, riding a horse rented from a military riding stable, *Hass v. United States*, 518 F.2d 1138 (4th Cir. 1975)—the validity of the *Feres* bar has been questioned. In the great majority of cases in which an active duty member of the armed services is injured, nevertheless, *Feres* has been applied. See the excellent discussion of the "incident to service" requirement in the Sixth Circuit's recent opinion in *Woodside, supra,* at 140–42.

■ It is clear that the *Feres* bar extends to claims arising out of military medical treatment. Decided along with *Feres*, which involved a serviceman's death in a barracks fire, as companion cases were two medical malpractice cases in which the courts of appeal had reached conflicting results. *Jefferson v. United States*, and *United States v. Griggs, decided sub nom. Feres v. United States, supra.* The lower federal courts have followed this rule in medical cases. *See, e. g., Harten v. Coons,* 502 F.2d 1363 (10th Cir. 1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975); *Peluso v. United States,* 474 F.2d 605 (3d Cir.), *cert. denied,* 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973); *Shults v. United States,* 421 F.2d 170 (5th Cir. 1969). (All of these cases were cited with approval by the Sixth Circuit in *Woodside, supra,* at 142.) In light of this overwhelming authority that a serviceman cannot sue the United States for the alleged negligence of military physicians, plaintiff's complaint against the United States must be dismissed.[2]

Defendants, in further support of dismissal of the complaint against the individual military doctors, cite 10 U.S.C. § 1089, which provides that the remedy against the United States provided by the FTCA shall be the exclusive remedy for damages caused by the negligence of any military physician, dentist, nurse, or other health personnel while acting within the scope of his duties. The legislative history of the bill enacting this section describes its purpose:

The bill is intended to provide, through application of the Federal Tort Claims Act, protection from individual liability to certain medical personnel while acting within the scope of their official duties.

---

1. "We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the government he is serving." (footnote omitted). *Feres, supra,* at 141, 71 S.Ct. at 157.

2. *Plaintiff, in effect, concedes this outcome in her response to the motion to dismiss, by stating: " . . . under Feres the plaintiff is not provided a remedy." In addition, plaintiff's apparent failure to file an administrative claim under the FTCA before suing would require dismissal.*

In short, defense medical personnel would be immunized from malpractice suits. The bill would eliminate the need of malpractice insurance for all such medical personnel, including physicians, dentists, nurses and other medical support personnel.

S.Rpt. 94–1264 (94th Congress, 2d Sess.), 1976 *U.S.Code Cong. & Admin.News*, p. 4443. The Senate Report cited the rise in medical malpractice litigation, the high costs of malpractice insurance, the lower pay of military medical personnel relative to private medical practice, and legislative precedent for making the FTCA the exclusive remedy, *e. g.*, the Federal Drivers Act, 28 U.S.C. § 2679(b), as support for the enactment of this legislation. It is clear that Congress intended to provide complete immunity for individual military doctors.

■ Plaintiff argues, however, that the statute, together with the *Feres* doctrine, creates a "Catch 22" situation, leaving her without a remedy. 10 U.S.C. § 1089 makes the FTCA action against the United States the exclusive remedy for negligence of military medical personnel, yet *Feres* bars suits by servicemen against the United States. She therefore argues that Congress could not have intended this and urges an interpretation of 10 U.S.C. § 1089 that would prevent such a result. She claims that because § 1089 makes the FTCA the exclusive remedy for negligence of military physicians, it contemplates that everyone should have a remedy; that where *Feres* bars the FTCA remedy, § 1089 does not apply, and servicemen may sue military physicians. Plaintiff points to subsection (c) of § 1089 as support, by analogy, for her position. That subsection provides:

(c) Upon a certification by the Attorney General that any person described in subsection (a) was acting in the scope of such person's duties or employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be re-

moved without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of title 28 [28 USCS §§ 1 *et seq.*] and all references thereto. Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit within the meaning of subsection (a) of this section is not available against the United States, the case shall be remanded to the State court.

Subsection (c) provides no support for plaintiff in this case. It merely saves a state court remedy for a plaintiff who brought suit in state court where the federal district court, upon removal, finds that the FTCA remedy is not available because, for example, the military physician was not acting within the scope of his duties. Plaintiff herein did not bring her action in state court.[3]

The interpretation of § 1089 sought by plaintiff is not persuasive when viewed in the light of the case law developed prior to the enactment of that section. The lower courts uniformly had extended *Feres*[4] to bar actions by servicemen against individual military doctors as well as against the United States, before the legislative immunity was granted in 1976. *See, e. g., Martinez v. Schrock*, 537 F.2d 765 (3d Cir. 1976), *cert. denied*, 430 U.S. 920, 97 S.Ct. 1339, 51 L.Ed.2d 600 (1977); *Harten v. Coons, supra*, (10th Cir.); *Tirrill v. McNamara*, 451 F.2d 579 (9th Cir. 1971). They reached this decision despite the recognition that some plaintiffs would be left without a remedy. *See Martinez, supra* (3d Cir. opinion); *Carr v. United States, supra* (Federal Drivers Act case with similar outcome). Some courts have cited *Henderson v. Bluemink*, 511 F.2d 399 (D.C.Cir.1974), as a decision to the con-

---

**3.** A similar argument was made and rejected in a case construing the Federal Drivers Act, *Carr v. United States*, 422 F.2d 1007 (4th Cir. 1970).

**4.** These courts frequently cite the statement in *Feres* quoted above at n. 1.

trary. *See* Justice White's dissent to the denial of certiorari in *Martinez, supra*, 430 U.S. 920–21, 97 S.Ct. 1339, 51 L.Ed.2d 600; *Jackson v. Kelly*, 557 F.2d 735, 740 (10th Cir. 1977). The decision in *Henderson*, however, is not really in point here because the plaintiff in that case was a *civilian* and the court reached its decision by applying the general (non-military) governmental immunity principles enunciated in cases like *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). Similarly, *Jackson v. Kelly, supra*, was brought by a civilian dependent of a serviceman. *See* Judge Sirica's analysis of *Henderson* in *Misko v. United States*, 453 F.Supp. 513 (D.D.C.1978).

There was, then, no "right" to sue military health personnel prior to enactment of § 1089. The statute may well have been enacted primarily to contravene *Henderson, supra*, which would allow *civilians* to sue military doctors. In addition, Congress cannot be deemed to have ignored the thirty-year-old and still vital *Feres* doctrine when it enacted § 1089, the effect of which would be to leave servicemen allegedly injured by negligence of military health personnel without any remedy. If Congress intended to overrule that longstanding precedent by law, it must necessarily have used clear language to effectuate this intent.[5]

There continues to be a comprehensive administrative scheme of veterans benefits that compensates injured servicemen. Indeed, plaintiff in this very case received some compensation from this system, although disappointed that she did not receive more.

For the foregoing reasons, plaintiff's complaint is dismissed against all defendants.

---

**5.** We have found only one reported decision holding, as we do, that *Feres* and the new § 1089 leave a serviceman without a judicial remedy under these circumstances. *Nagy v. United States*, 471 F.Supp. 383 (D.D.C.1979) (little discussion of this point). In at least two decisions, however, courts have implied that § 1089 would have had this effect but was inapplicable because it was not retroactive. *See Martinez, supra*, dissent to denial of certiorari by Supreme Court; and *Misko, supra*.