**Dossie B. McCALEB, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 3–83–0340.**

United States District Court, M.D. Tennessee, Nashville Division.

Oct. 26, 1983.

Claude Callicott, Nashville, Tenn., Michael Geltner, Washington, D.C., Mark H. Collier, Dickson, Tenn., for plaintiff.

C. Douglas Thoresen, Asst. U.S. Atty., Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

Plaintiff, Dossie B. McCaleb, as personal representative of the estate of his son, Marks Crittenden McCaleb [decedent], brings this action pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346. Plaintiff's decedent, an enlisted man in the United States Navy, was stabbed to death by another enlisted man while decedent lay sleeping in his bunk on the U.S.S. Saipan, while docked in Norfolk, Virginia. Charles Jeffrey Roberts, the fellow serviceman who perpetrated the stabbing, had been absent without leave from the U.S.S. Saipan. Upon his return from AWOL, the doctor on the U.S.S. Saipan sent him to the Naval Regional Medical Center [Center] in Portsmouth, Virginia. At the Center, physicians decided that Roberts could return to ship. Upon his return this incident occurred, and plaintiff bases this claim upon the allegation that the military physicians at the Center recklessly endangered third parties by permitting Roberts to return to ship. In support of the claim, plaintiff asserts that Roberts ingested alcohol and drugs while AWOL, that the ship's doctor sent Roberts to the Center because he believed Roberts was in a psychotic state, that physicians at the Center failed to diagnose and treat his condition, and that Roberts was in this psychotic state when he stabbed decedent.

The case is now before the Court upon the motion to dismiss filed by the United States pursuant to Rule 12(b), Fed.R.Civ.P. In addition, although plaintiff has not asserted a claim under the Public Vessels Act [PVA], 46 U.S.C. § 781 et seq., or the Suits in Admiralty Act [SIAA], 46 U.S.C. § 741 et seq., the United States raises these Acts in the pleadings and insists that plaintiff does not have a cause of action under either

of these Acts. In the alternative, defendant moves for summary judgment, Rule 56, Fed.R.Civ.P., on the ground that a genuine issue of material fact does not exist.

■ This case is controlled by the doctrine established in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and must be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P. It is now well-settled that in the Federal Tort Claims Act, Congress did not contemplate tort recoveries by servicemen "where the injuries arose out of or in the course of activity incident to service." The Court in *Feres* offered three justifications for this result. First, because servicemen receive compensation benefits when they are injured, the failure of the FTCA to adjust to these benefits "is persuasive that there was no awareness that the Act might be interpreted to permit recovery for injuries incident to military service." *Id.* at 144, 71 S.Ct. at 158. Second, the FTCA provides that the law of the state where the wrongful act occurred shall determine the United States' liability. Because the relationship between the United States and servicemen is "distinctly federal," Congress did not intend for the laws of the various states to determine liability. *Id.* at 143, 71 S.Ct. at 158. Third, the FTCA subjects the United States to liability "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Because the relationship between servicemen and the United States is unlike any other relationship, Congress did not contemplate recoveries by servicemen for injuries that arose "incident to service." *Id.* at 143, 71 S.Ct. at 158.

A further rationale was noted in *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed.2d 139 (1954), in that the command structure would be disrupted "if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty...." *Id.* at 112, 75 S.Ct. at 145.

In *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the Supreme Court affirmed the vitality of two of the justifications offered in *Feres* and the one offered in *Brown.* In *Stencel* the life support system of a fighter aircraft malfunctioned and the pilot who suffered injuries sued the U.S. and the manufacturer. Claiming that any malfunction was due to faulty specifications, the manufacturer sought indemnification from the U.S. The Court dismissed the indemnification action, holding that the pilot's injuries arose "incident to service" and that the manufacturer could not recover indirectly what the pilot could not recover directly. To reach this decision the Court emphasized the "distinctly federal" relationship between the government and servicemen, the need to preserve the military command structure, and that "the military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries." *Id.* at 673, 97 S.Ct. at 2059.

The leading case in the Sixth Circuit on the *Feres* doctrine, *Woodside v. United States,* 606 F.2d 134 (6th Cir.1979), accepted the justifications offered in *Stencel.* In *Woodside* an active duty officer on leave was killed while taking flight lessons from an aero club. The club was a nonappropriated fund activity of the Air Force and the officer was taking the flight instruction solely because he wanted to obtain a commercial pilot's license. Following *Stencel,* *Woodside* emphasized that the *Feres* doctrine was not justified solely because certain activities might disrupt the military command structure. Rather, the *Feres* doctrine is applicable whenever "a service member is subject to military discipline at the time of injury ..." and that "[a] service member is subject to military discipline where his movements or actions are under the immediate control of military authorities." *Id.* at 141–42. Consequently, *Woodside* held that the suit should be dismissed because the officer was entitled to lessons by virtue of his service in the military. *See also Hale v. United States,* 452 F.2d 668 (6th Cir.1971).

*The Feres doctrine bars plaintiff's action under the FTCA.*

This case appears to be one of first impression. Neither party has cited, and this Court's research failed to reveal, a case in which a serviceman was treated by military doctors and, in a separate incident, harmed another serviceman. Thus, no court has decided if plaintiff must establish that both incidents—the treatment of Roberts and the stabbing—were not "incident to service;" or, whether plaintiff must only establish that one of the incidents was not "incident to service." This court does not have to decide this question because, as is discussed below, the treatment of Roberts and the stabbing were both "incident to service."

*Treatment of Roberts*

██ Defendant asserts that the treatment of Roberts was "incident to service" because it comprises a claim for medical malpractice. Claims brought by servicemen for malpractice are routinely dismissed when the allegedly negligent treatment occurred during active duty. A recent example is *Howell v. United States,* 489 F.Supp. 147 (W.D.Tenn.1980), where the medical treatment provided to a woman enlisted in the U.S. Navy was allegedly negligent. Emphasizing that "[i]t is clear that the *Feres* bar extends to claims arising out of military medical treatment," *id.* at 148, *Howell* dismissed the action. *See also Stansberry v. Middendorf,* 567 F.2d 617 (4th Cir. 1978). In this case, because Roberts was no longer AWOL and was an enlisted man on active duty during his treatment at the Center, defendant asserts that any cause of action arising from the treatment is barred by *Feres.*

Plaintiff attempts to distinguish the malpractice cases by claiming that the treatment of Roberts recklessly endangered third parties and that this is distinct from a claim for malpractice. To support this assertion, plaintiff cites *Semler v. Psychiatric Institute,* 538 F.2d 121 (4th Cir.1976). In *Semler* a state court judge had established a supervision schedule for the kidnapper of a young girl being treated at an institute.

After a doctor at the institute altered the supervision schedule without notifying the court, the kidnapper killed a young girl. Although the district court concluded that the doctor's acts did not constitute malpractice, the Fourth Circuit held the institute liable for the girl's death because the institute breached its duty to comply with the court order so as to protect the public. *Id.* at 126. *Semler,* however, does not help plaintiff because it did not involve an action brought by a serviceman under the FTCA.

Although this case is not a typical malpractice claim because decedent was not the one treated by U.S. military doctors, the *Feres* doctrine still applies to the treatment of Roberts. Roberts' treatment was plainly "incident to service" since he was no longer AWOL and was back on active duty. If Roberts had stabbed himself after being released from the Center, the suit would be barred by the *Feres* doctrine. *See Johnson v. United States,* 631 F.2d 34 (5th Cir.1980); *Benton v. United States,* 489 F.Supp. 134 (D.Mass.1980). The justifications offered by the Sixth Circuit in *Woodside* support a finding that this result should not change when the serviceman harms another serviceman "incident to service." In particular, plaintiff urges that the distinction drawn in *Semler* between malpractice and endangerment of third parties should control this case because plaintiff's cause of action arose in Virginia. *Woodside* indicated, however, that in the FTCA Congress did not intend for the laws of the various states to determine liability because of the "distinctly federal" relationship between servicemen and the U.S.

*Stabbing of Decedent*

The stabbing of decedent was also "incident to service." Again, *Woodside* calls for a somewhat mechanical analysis: was the decedent "subject to military discipline at the time of injury." 606 F.2d at 141. In this case the answer must be "yes" because during the stabbing decedent was on active duty on board a U.S. military installation docked in a U.S. port. The fact that decedent was off-duty and helpless to prevent the assault fails to change this result. De-

cedent was subject to "military discipline" and that is enough under *Woodside.*

Plaintiff asserts that the stabbing was not "incident to service" because the sole justification for the *Feres* doctrine is the need to preserve the military command structure. Therefore, his argument goes, because Roberts and decedent were off-duty and not engaged in military activity, the command structure would not be disrupted if this Court held that the *Feres* doctrine was inapplicable. However, as previously discussed, the Supreme Court and the Sixth Circuit have not limited the doctrine to situations directly involving the command structure. Indeed, in *Woodside* the Sixth Circuit rejected the "contention that the *Feres* doctrine is limited to those situations where a service member is injured or killed in the course of military duty or while subject to a direct command relationship with the Armed Forces." 606 F.2d at 140.

■■■ Finally, plaintiff urges that dismissal at this stage of the litigation is inappropriate because the facts surrounding the Center's decision to release Roberts are in dispute. It is true that whether a cause of action arose "incident to service" is a question of fact to be decided from the circumstances of each case. *Hass v. United States,* 518 F.2d 1138, 1141 (4th Cir.1975). But in this case plaintiff concedes that during the treatment Roberts had returned from being AWOL and was on active duty and that during the stabbing both men were on active duty on board a U.S. military installation docked in a U.S. port. Under *Woodside* this establishes that the activities of both men were "incident to service." Therefore, plaintiff does not have a cause of action under the FTCA.

*Plaintiff does not have a cause of action the PVA or SIAA*

Plaintiff has not asserted a claim under the PVA or the SIAA. The only reason this issue has arisen is that defendant raised the applicability of these two Acts in its motion to dismiss. The issues have been briefed, however, and this Court should decide whether plaintiff has a cause of action under either Act. To force plaintiff to amend his complaint and to delay ruling on this issue would be a waste of time for the Court and the parties.

The PVA provides, in relevant part (46 U.S.C. § 781), that an action may be brought in admiralty against the U.S. "for damages caused by a public vessel of the United States, and for compensation for towage and salvage services . . . ." The SIAA provides, in relevant part (46 U.S.C. § 742), that an action may be brought in admiralty against the U.S. in cases where an action could have been brought "if such vessel were privately owned or operated. . . ."

Every court that has considered the question has held that an action cannot be brought under the PVA or the SIAA if it is barred by the *Feres* doctrine. In *Charland v. United States,* 615 F.2d 508 (9th Cir. 1980), a sailor on active duty, on leave, was killed when he voluntarily participated in a training exercise. After holding that an action under the FTCA was barred by the *Feres* doctrine, the Ninth Circuit indicated that the action could not be brought under the PVA or SIAA. It emphasized that "[t]he rationale supporting the ruling in *Feres* limiting the waiver of sovereign immunity applies with equal force in the context of governmental liability in admiralty." *Id.* at 509. *See also Beaucoudray v. United States,* 490 F.2d 86 (5th Cir.1974); *Seveney v. United States,* 550 F.Supp. 653 (D.R.I.1982); *In re Ionian Glow Marine, Inc.,* 510 F.Supp. 196 (E.D.Va.1981).

For all the foregoing reasons the defendant's motion to dismiss with prejudice is granted. An appropriate order will enter.