**Donna BASS, Plaintiff,**

v.

**Captain Billy PARSONS, M.D., et al., Defendants.**

**Civ. A. No. 83–5155.**

United States District Court,
S.D. West Virginia,
Beckley Division.

Jan. 16, 1984.

---

**3.** 720 F.2d 879 (5th Cir.1983).

Gregory W. Sproles, Losch, Sproles & Barnett, Summersville, W.Va., for plaintiff.

Nancy C. Loar, Asst. U.S. Atty., Torts Branch, Litigation Div., Charleston, W.Va., William A. Woodruff, Major, JAGC, Washington, D.C., for defendants.

MEMORANDUM OPINION
AND ORDER

HADEN, Chief Judge.

### I. *Introduction*

This is an action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, *et seq.* Plaintiff seeks damages from Captain Billy Parsons, M.D., Captain Andrew Deekins, M.D., Noble Army Hospital and the United States Army for injuries she received during basic training at Fort McClellan, Alabama. Pending before the Court is the Defendants' motion to dismiss the complaint. *See Rule* 12(b) of the Federal Rules of Civil Procedure.

### II. *Facts*[1]

On November 4, 1980, Plaintiff was stationed at Fort McClellan, Alabama, where she was in basic training for the United States Army. On that date Plaintiff dislocated her right hip while performing physical training exercises at the direction of her commanding officer. Plaintiff experienced difficulty in walking and standing after the injury and was taken to Noble Army Hospital where she was examined and treated by Drs. Parsons and Deekins. Drs. Parsons and Deekins diagnosed Plaintiff's injury as a muscle strain and released her to return to the physical training program. Plaintiff returned to the hospital complaining of increased pain in her right hip, difficulty in walking, and a "grating" feeling in her right hip joint. Drs. Parsons and Deekins again informed Plaintiff her injury was only a muscle strain and expressed to Plaintiff their belief that Plaintiff was concocting a story in order to attempt to escape basic training exercises.

Plaintiff's requests to consult a private physician were denied and Plaintiff was required to continue with her basic training exercises. Plaintiff continued to experience increasing pain and limitation of movement during training activities and her condition deteriorated to the point where she could no longer walk or perform

1. In considering the instant motion the Court has considered only the complaint and has accepted as true all the allegations of fact as set forth therein. *See Mims v. Kemp,* 516 F.2d 21 (4th Cir.1975).

any of the duties required of a recruit in basic training. It was only at this juncture that Drs. Deekins and Parsons performed the proper diagnostic tests and discovered Plaintiff had a dislocated hip.

Plaintiff complains that as a result of the foregoing willful and intentional actions by Defendants, she was medically discharged from the United States Army and that she is presently permanently disabled. Plaintiff seeks compensatory damages of $2,000,000 and punitive damages of $5,000,000.

### III. *Feres Doctrine*

■ In *Feres v. U.S.*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) the Supreme Court held that the United States "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activities incident to service." *Id.* at 146, 71 S.Ct. at 159. The Supreme Court reaffirmed the vitality of *Feres* in *Stencel Aero Engineering Corp. v. U.S.*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) and discussed the three factors underlying the intra-military immunity doctrine:

> "First, the relationship between the Government and members of its Armed Forces is ' "distinctively federal in character," ' *id.* [340 U.S.], at 143 [71 S.Ct. at 158], citing *United States v. Standard Oil Co.*, 332 U.S. 301 [67 S.Ct. 1604, 91 L.Ed. 2067] (1947); it would make little sense to have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury. Second, the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory 'no fault' compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government. A third factor was explicated in *United States v. Brown*, 348 U.S. 110–112 [75 S.Ct. 141–143, 99 L.Ed. 139] (1954), namely, '[t]he peculiar and special relationship of the soldier to his superiors, the effects

of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty ....' "

431 U.S. at 671–72, 97 S.Ct. at 2057–58.

"[I]t is clear that the *Feres* bar extends to claims arising out of military medical treatment." *Howell v. U.S.*, 489 F.Supp. 147, 148 (W.D.Tenn.1980) (collecting cases). In fact, one of the companion cases decided by the Supreme Court along with *Feres* involved a serviceman's medical malpractice action arising from an allegedly negligently performed abdominal operation. *See Jefferson v. U.S., decided sub. nom. Feres v. U.S.*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The court affirmed the Fourth Circuit's holding that the serviceman's action was barred by intramilitary immunity. *Id.* at 146, 71 S.Ct. at 159.

Inasmuch as the Plaintiff's injuries unquestionably arise from a service related incident, a straightforward application of the *Feres* doctrine requires the dismissal of this action. Plaintiff's reliance on the cases of *Jackson v. Kelly*, 557 F.2d 735 (10th Cir.1977); *Sawyer v. U.S.*, 465 F.Supp. 282 (E.D.Va.1978); *Buck v. U.S.*, 433 F.Supp. 896 (M.D.Fla.1977) and *Hendry v. U.S.*, 418 F.2d 774 (2d Cir.1969) for the proposition that "[o]ther cases in the area of medical malpractice have allowed plaintiffs to bring suit against the hospitals and physicians responsible"[2] is ill-founded. In none of the above cited cases was the injured party a serviceman seeking recovery for a service related injury (indeed, in none of these cases was the injured party in the armed forces). *See Jackson v. Kelly*, 557 F.2d at 736; *Sawyer v. U.S.*, 465 F.Supp. at 284; *Brick v. U.S.*, 433 F.Supp. at 898; *Hendry v. U.S.*, 418 F.2d at 777. Thus, these cases did not involve the *Feres* doctrine and have no relevance whatsoever to the issues at bar.

---

**2.** Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss at p. 3.

Plaintiff attempts to escape the application of *Feres* by arguing that it does not preclude a service related action where the actions of the Defendants were *intentional.* This argument has been considered and rejected by the courts. *See e.g., National Bank of Waukeegan v. U.S.,* Slip Opinion, at p. 7, (N.D.Ill.1978) *affirmed* 594 F.2d 1154 (7th Cir.1978) [3] wherein the court stated that "[t]he logic of *Feres* does not permit a principled distinction between negligent and intentional torts." *See also Stanley v. Central Intelligence Agency,* 639 F.2d 1146, 1152–53 (5th Cir.1981) and the numerous cases cited therein.

Nor can Plaintiff avoid the operation of *Feres* by bringing suit, as Plaintiff has here, against Defendants in their individual capacities. *See Stanley v. Central Intelligence Agency,* 639 F.2d 1146 (5th Cir.1981); *Thornwell v. U.S.,* 471 F.Supp. 344 (D.D.C. 1979); *Bailey v. DeQuevedo,* 375 F.2d 72 (3d Cir.1967); *Bailey v. VanBuskirk,* 345 F.2d 298 (9th Cir.1965) *cert. denied* 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966). *Feres* has been interpreted to preclude malpractice actions "by servicemen against individual military doctors as well as against the United States . . . ." *Howell v. U.S.,* 489 F.Supp. 147, 149 (W.D.Tenn.

1980) *citing Martinez v. Schrock,* 537 F.2d 765 (3d Cir.1976) *cert. denied* 430 U.S. 920, 97 S.Ct. 1339, 51 L.Ed.2d 600; *Harten v. Coons,* 502 F.2d 1363 (10th Cir.1974) *cert. denied* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975); *Tirrill v. McNamara,* 451 F.2d 579 (9th Cir.1971).

■ Plaintiff's final argument is that 10 U.S.C. § 1089(f) [4] serves to expose military doctors to liability for medical malpractice actions despite the immunity specifically provided by Section 1089(a).[5] Plaintiff reasons that to hold military doctors immune from malpractice suits would render the malpractice liability insurance provisions of Section 1089(f) superfluous. The Court finds Plaintiff's reasoning without merit.

As revealed by the legislative history, the purpose of Section 1089 is

"To provide, through application of the Federal Tort Claims Act, protection from individual liability to certain medical personnel while acting within the scope of their official duties. In short, defense medical personnel would be immunized from malpractice suits. The bill would eliminate the need of malpractice insurance for all such medical personnel . . . ."

---

**3.** In affirming the district court's holding that *Feres* applies with equal vitality to intentional and negligent torts, the Seventh Circuit noted that this is the unanimous view of the courts which have addressed this issue. 594 F.2d at 1157, n. 8.

**4.** 10 U.S.C. § 1089(f) provides:

"The head of the agency concerned or his designee may, to the extent that he or his designee deems appropriate, hold harmless or provide liability insurance for any person described in subsection (a) for damages for personal injury, including death, caused by such person's negligent or wrongful act or omission in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of such person's duties if such person is assigned to a foreign country or detailed for service with other than a Federal department, agent, or instrumentality or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in Section 1346(b) of Title 28 [28 U.S.C. § 1346(b)], for such damage or injury."

**5.** 10 U.S.C. § 1089(a) provides:

"The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 [28 U.S.C. §§ 1346(b) and 2672] for damages for personal injury, including death, caused by the negligent or wrongful act or omission of any physician dentist, nurse, pharmacist, or paramedical or other supporting personnel (including medical and dental technicians, nursing assistants, and therapists) of the armed forces, the Department of Defense, or the Central Intelligence Agency in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of his duties or employment therein or therefor shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against such physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (or the estate of such person) whose act or omission gave rise to such action or proceedings.

S.Rep. No. 94–1264, 94th Cong., 2d Sess. 1 *reprinted in* [1976], U.S.Code Cong. & Ad. News, 4443.

The purpose of Section 1089(f)

"Is not to create an exception to the immunity from malpractice actions created by Section 1089(a). The purpose of subsection (f) is to enhance protection against malpractice actions in circumstances where local law allows recovery against military doctors. The subsection mentions two such circumstances: when a military physician is (1) assigned to a foreign country, or (2) assigned to other than a federal department, e.g., a private hospital. In such circumstances the doctor may not be covered by the Federal Tort Claims Act and the Secretary of Defense is authorized to provide indemnification or insurance."

S.Rep. No. 94–1264, 94th Cong., 2d Sess. 1, *reprinted in* [1976], U.S.Code Cong. & Ad. News at 4451, *quoted in Baker v. Barber,* 673 F.2d 147, 149–50 (6th Cir.1982). Because Section 1089 was enacted to protect military doctors from malpractice suits by *civilians* in circumstances where the Federal Tort Claims Act would not apply, it is obvious that Section 1089 was not intended to abrogate the intra-military immunity recognized in *Feres. See Pelphrey v. U.S.,* 674 F.2d 243 (4th Cir.1982); *Howell v. U.S.,* 489 F.Supp. 147 (W.D.Tenn.1980); *Hawe v. U.S.,* 670 F.2d 652 (6th Cir.1982) (per curiam). In *Hawe,* the Sixth Circuit could find no support for Plaintiff's contention that by enacting Section 1089, Congress effectively overruled *Feres:*

"In providing personal immunity to military physicians, Congress has evinced no intention whatever to extend the Federal Tort Claims Act to claims for malpractice made by persons such as plaintiff who were injured and treated while in the military service. Instead, Congress has continued to provide remedies for injured servicemen through alternative statutory protections, including the Veterans' Benefits Act. Neither the language of the statute nor the legislative history indicates that Congress intended to change

the judicial exception to the Tort Claims Act set forth thirty years ago in *Feres.*" 670 F.2d at 653. This Court also perceives no indication in Section 1089 that Congress intended to abrogate *Feres.*

## IV. *Conclusion*

For the reasons discussed above, the Court concludes that this action is barred by the *Feres* doctrine. Accordingly, the Court hereby grants Defendants' motion to dismiss and ORDERS that this action be dismissed from the docket of this Court.