**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LAWRENCE RANDALL MCCONNELL;
DEBORAH ELLEN MCCONNELL,
individually and as surviving
parent of Joseph James
McConnell, deceased,
        *Plaintiffs-Appellants,*

       v.

UNITED STATES OF AMERICA,
        *Defendant-Appellee.*

No. 05-15025

D.C. No.
CV-03-01886-JAT

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
December 7, 2006—San Francisco, California

Filed March 8, 2007

Before: Thomas G. Nelson, Ronald M. Gould, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan;
Concurrence by Judge Gould

2717

**COUNSEL**

David L. Abney of Skousen, Skousen, Gulbrandsen & Patience, P.C., Mesa, Arizona, for the plaintiffs-appellants.

Paul K. Charlton, United States Attorney, John Tuchi, Deputy Chief, James C. Hair Jr., Assistant U.S. Attorney, and Peter M. Lantka, Assistant U.S. Attorney (presented argument), Phoenix, Arizona, for the defendant-appellee.

**OPINION**

CALLAHAN, Circuit Judge:

The sole issue in this case is whether the *Feres* doctrine, which prohibits suit against the government for injuries that are incident to military service, bars appellants' civil suit against the United States for the tragic death of their son, Lieutenant McConnell, in a waterskiing accident. We determine that under our precedent the facts that Lt. McConnell's use of the boat was a benefit of his status as a service member and that the alleged negligence was subject to military orders and regulations compel us to affirm the district court's grant of summary judgment to the government.

# I

This case arises out of a fatal boating accident at Lake Pleasant, Arizona on May 19, 2001. At the time of the accident, Lieutenants Joseph James McConnell, Steven Frodsham, Mark Donohue, and Matthew Crowell were F-16 student pilots in the United States Air Force ("USAF"), assigned to Luke Air Force Base ("Luke AFB"), Arizona. On May 18, the day before the accident, Lt. Crowell rented a 1990 USAF-owned boat from the Luke AFB Recreation Center, located at Luke AFB. Lt. Crowell rented the boat because his colleagues were busy in a meeting. Nevertheless, the record indicates that Lts. McConnell, Frodsham, and Donohue were subsequently briefed on the installation rules and regulations governing the use of the boat, and were required to follow them.

On the morning of May 19, Lts. McConnell, Frodsham, and Donohue transported the boat to Lake Pleasant using McConnell's truck. Lt. Crowell planned to join the group later. At around 10:30 a.m., Lt. Frodsham was driving the boat, Lt. Donohue was in the boat observing, and Lt. McConnell was waterskiing behind the boat. Lt. McConnell then fell while waterskiing, and Lt. Frodsham steered the boat back around to bring the ski rope to Lt. McConnell, who was floating in the water by use of a life jacket. At that point, Lt. Frodsham attempted to slow the boat down but was unable to do so. Instead, the boat surged out of control and struck Lt. McConnell in the head, causing a fatal brain injury. The police investigation disclosed that the boat's throttle cable had broken 14 feet, 7 inches from the motor. The broken cable kept the throttle stuck at the same position set by the operator immediately before the break and permitted the operator to slow the boat only by turning off the ignition.

The boat was rented pursuant to an agreement with the Luke AFB Recreation Center, which is operated by the Luke AFB Recreation Program. Through the Recreation Center,

boat rentals are available to "active duty members and their family members" although civilian guests may use recreational equipment if accompanied and supervised by military personnel. The Recreation Center is part of the broader USAF services programs supporting the Air Force mission.[1] The 56th Services Squadron, Mission Support Group, and Fighter Wing Commanders administer the USAF services program at Luke AFB. Among the programs offered are Morale, Welfare, and Recreation ("MWR") Programs, including the Luke AFB Outdoor Recreation Program.

The appellants, Lt. McConnell's parents, filed a complaint against the United States for wrongful death and loss of consortium under the Federal Tort Claims Act. Their complaint is solely against the United States, and no other individuals. They allege that the USAF failed to properly maintain, service, and repair the boat, and failed to warn its users and the public that the boat was defective and unreasonably dangerous.

The district court granted the government's motion for summary judgment, holding that the *Feres* doctrine deprived

---

[1] Air Force Instruction 34-262, Services Programs and Use Eligibility, provides:

**1.1 Purpose.** Services programs support the Air Force mission by contributing to readiness and improving productivity through programs promoting fitness, esprit-de-corps, and quality-of-life for authorized patrons or customers.

\* \* \*

**1.2 Importance.** Services programs are vital to mission accomplishment and form an integral part of the non-pay compensation system. . . . Services programs encourage positive individual values and aid in recruitment and retention of personnel. They provide for the physical, cultural, and social needs and general well-being of military members and their families, providing community support systems that make Air Force bases hometowns for a mobile military population.

the court of subject matter jurisdiction. Lt. McConnell's parents filed a timely notice of appeal.

We review a dismissal for lack of subject matter jurisdiction pursuant to the *Feres* doctrine de novo. *Wilkins v. United States*, 279 F.3d 782, 785 (9th Cir. 2002). "Factual findings are reviewed de novo, with all disputed facts resolved in favor of the non-moving party." *Costo v. United States*, 248 F.3d 863, 866 (9th Cir. 2001), *cert. denied*, 534 U.S. 1078 (2002) (citing *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996)).

## II

**[1]** The Federal Tort Claims Act ("FTCA") is a waiver of the federal government's sovereign immunity. *See* 28 U.S.C. §§ 1346(b)(1) (2006), 2679 (2006). Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674 (2006). However, in *Feres v. United States*, 340 U.S. 135 (1950), the Supreme Court held that the United States is not liable for injuries that "arise out of or are in the course of activity incident to service" because the United States did not intend to waive its immunity to such claims. *Id.* at 146. "This broad exception has been labeled 'the *Feres* doctrine.' " *Costo*, 248 F.3d at 866.

Subsequent Supreme Court decisions have identified three policy rationales underlying the *Feres* doctrine: "(1) the distinctly federal nature of the relationship between the Government and the members of its armed forces . . . , (2) a generous compensation scheme for soldiers (the Veterans' Benefits Act) serves as an ample alternative to tort recovery, and (3) permitting military personnel to sue the armed forces would endanger discipline." *Id.* at 866 (citing *United States v. Johnson*, 481 U.S. 681, 684 n.2 (1987)).

The third policy rationale — preserving the integrity of military discipline — is the most robust explanation for the *Feres* doctrine and most critical to this case.[2] The Supreme Court has commented:

> The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Torts Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the [*Feres*] Court to read that Act as excluding claims of that character.

*United States v. Brown*, 348 U.S. 110, 112 (1954); *see also Costo*, 248 F.3d at 866 ("[T]he danger to discipline . . . has been identified as the best explanation for *Feres*."); *cf. Zaputil v. Cowgill*, 335 F.3d 885, 887 (9th Cir. 2003) ("The *Feres* doctrine is applicable whenever a legal action would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States.") (internal quotation marks omitted).

**[2]** In determining whether a service member's injury is "incident to service" and therefore, barred under the *Feres* doctrine, we have employed a case-by-case approach, addressing four factors:

> (1) the place where the negligent act occurred, (2) the duty status of the plaintiff when the negligent act occurred, (3) the benefits accruing to the plaintiff because of the plaintiff's status as a service member, and (4) the nature of the plaintiff's activities at the time the negligent act occurred.

---

[2]An outline of some of the criticism of the rationales is set forth in our opinion in *Costo*. 248 F.3d at 866-67.

*Costo*, 248 F.3d at 867 (citing *Dreier*, 106 F.3d at 848). Moreover, we have stated that none of these factors are dispositive. *Id.* "Rather than seizing on any particular combination of factors, we have focused on 'the totality of the circumstances.' " *Id.* Furthermore, although the various cases applying the *Feres* doctrine may defy reconciliation, we are bound by, and seek to align our resolution of this particular case to, our precedents.[3]

## III

Our application of the four factors to the particular facts in this case compels our determination that under our precedent, particularly *Costo* and *Bon v. United States*, 802 F.2d 1092 (9th Cir. 1986), the *Feres* doctrine bars appellants' suit against the government.[4]

[3] Although appellants stress that the accident occurred on a public lake, the district court properly focused on the situs of the negligence, not the location of the accident. *Costo*, 248 F.3d at 868 ("The appropriate consideration is the 'situs of the negligence,' not the location of the accident."); *see also John-*

---

[3]In *Costo*, we noted that "we have reached the unhappy conclusion that the cases applying the *Feres* doctrine are irreconcilable, and thus, comparison of fact patterns to outcomes in cases that have applied the *Feres* doctrine is the most appropriate way to resolve *Feres* doctrine cases. *Dreier* [*v. United States*], 106 F.3d [844,] 848 [(9th Cir. 1996)] (citing *Estate of McAllister* [*v. United States*], 942 F.2d [1473,] 1477 [(9th Cir. 1991)])." *Costo*, 248 F.3d at 867 (internal quotation marks omitted).

[4]Appellants have filed a motion for leave to supplement the record on appeal with the underlying complaint in *Bon* as well as portions of the government's appellate brief in *Bon*. In the alternative, appellants ask that we take judicial notice of "the public records presented from the *Bon* district court and appellate files." The government opposes the motion for leave to supplement the record, and urges that judicial notice be limited to the fact that the two documents contain certain allegations and not extend to the veracity of those allegations.

We hereby grant appellants' motion for judicial notice and deny their motion to supplement the record.

*son v. United States*, 704 F.2d 1431, 1436 (9th Cir. 1983) ("[T]he place on the base where the negligent act was found by the trial court to have occurred must be distinguished from the place where the accident occurred.");[5] *Monaco v. United States*, 661 F.2d 129, 132-33 (9th Cir. 1981) (holding that a father's claim for cancer that was diagnosed after he left the service, and his daughter's claim arising out of her birth defect, were barred by the *Feres* doctrine because the alleged negligence — the father's exposure to radiation — occurred when he was on active duty). Here, the appellants allege that the USAF failed to service and repair the boat and do not dispute that the boat was serviced and repaired, if at all, at Luke AFB. Thus, unlike *Costo*, where much of the alleged negligence occurred on base, here *all* the alleged negligence occurred on base. However, the location of the negligence is not dispositive, and we must also consider the other factors. *See Johnson*, 704 F.2d at 1437.

[4] The parties agree that Lt. McConnell was on leave but on active duty at the time of the accident. The plaintiffs in *Bon* and *Costo* were "on liberty" at the time of the accidents, but also on active duty. *Costo*, 248 F.3d at 867. Similar to the plaintiffs in *Bon* and *Costo*, the record indicates that Lt. McConnell was still subject to military orders and discipline though on leave. *Cf. Charland v. United States*, 615 F.2d 508, 509 (9th Cir. 1980) ("Although on furlough he remained on active duty and was subject to military orders and discipline at all times while on board the Navy vessel."). Nevertheless, Lt. McConnell was not on duty at the time of the accident. Accordingly, this factor, although not dispositive, may weigh against the application of the *Feres* doctrine.

The district court found that Lt. McConnell's use of the motorboat was a benefit of his position as a USAF service-

---

[5]The Supreme Court's decision in *United States v. Johnson*, 481 U.S. 681 (1987) is not related to the Ninth Circuit's case, *Johnson v. United States*, 704 F.2d 1431 (9th Cir. 1983).

man. Appellants, however, argue that because Lt. McConnell did not rent the boat, he was more similarly situated to a civilian, like the service members in *Dreier*, 106 F.3d at 844, and *Johnson*, 704 F.2d at 1431. These cases can be distinguished. In *Dreier*, we held that because there was evidence that anyone could access the Solo Point area — even civilians without a permit — Dreier's presence at Solo Point was not a benefit of his military status. The *Dreier* court distinguished *Bon* as an instance where "use of the Center was restricted to members of the military and employees of the Department of Defense and their guests and dependents." *Dreier*, 106 F.3d at 851 (quoting *Bon*, 802 F.2d at 1095) (internal quotation marks and brackets omitted).

Similarly, in *Johnson*, the court identified Johnson's after-hours employment at the non-commissioned officers club with work routinely performed by civilian bartenders, and stated that the employment could not "logically be distinguished from second jobs held by other off-duty military personnel." 704 F.2d at 1439. The court distinguished Johnson's situation from instances where "the plaintiffs had access to the various recreational and medical benefits only because of their status as military personnel." *Id.* at 1438.

**[5]** This case falls into the latter category. Boat rentals were provided through the Luke AFB Recreation Center to "active duty members and their family members" and guests had to be supervised and accompanied by military personnel. Thus, Lt. McConnell's use of the USAF-owned boat on Lake Pleasant is more like the situation in *Bon* than in *Dreier*. Moreover, Lts. McConnell, Donohue, and Frodsham took possession of and transported the boat, indicating that they were exercising their privileges as service members rather than as civilian guests of Lt. Crowell or each other. Accordingly, neither *Dreier* nor *Johnson* preclude the panel from holding that the benefit accruing to Lt. McConnell — his use of the boat — was due to his status as a service member.

**[6]** It is true that Lt. McConnell's activities were purely recreational on May 19, 2001, but this does not mean that they were unrelated to his military status. The plaintiffs in both *Bon* and *Costo* were similarly engaged in purely recreational activities. In *Costo*, we stated that "it has long been recognized — in our court, at least — that military-sponsored activities fall within the *Feres* doctrine, regardless of whether they are related to military duties." 248 F.3d at 868. Furthermore, the government here argues that the recreational activities are part of the military mission.[6] Accordingly, the fact that Lt. McConnell was engaged in a military-sponsored recreational activity weighs in favor of the application of the *Feres* doctrine.[7]

---

[6]The government asserts that

> [r]ecreational programs help reduce the stress caused by the arduous training and lifestyle members of the military are required to endure and provide opportunities for relaxation that otherwise are unavailable because of the location of military bases and the demands of military services. These are core military functions, no less than combat training and military medical care.

[7]As we noted in *Costo*, 248 F.3d at 868, cases from outside the Ninth Circuit support this conclusion. *See, e.g.*, *Pringle v. United States*, 208 F.3d 1220, 1227 (10th Cir. 2000) (soldier beaten by gang members after being ejected from military MWR club; "The relationship between the Army and service personnel engaged in recreational activities under the Army's MWR program is 'distinctively federal' in character."); *Walls v. United States*, 832 F.2d 93 (7th Cir. 1987) (crash of airplane belonging to recreational Aero Club); *Bozeman v. United States*, 780 F.2d 198, 201 (2d Cir. 1985) (patron of Non-Commissioned Officers Club injured when ejected by bouncer; "Johnny Bozeman was only entitled to be in the NCO club because he had an appropriate rank, was a member of the Army and was on active duty status."); *Woodside v. United States*, 606 F.2d 134 (6th Cir. 1979) (crash of airplane belonging to recreational Aero Club); *Hass ex rel. United States v. United States*, 518 F.2d 1138, 1141 (4th Cir. 1975) (injury while riding a horse rented from a Marine Corps-operated stable; "Recreational activity provided by the military can reinforce both morale and health and thus serve the overall military purpose."); *Chambers v. United States*, 357 F.2d 224, 229 (8th Cir. 1966) (death in on-base swimming pool; "As a matter of fact, Airman Chambers' use of the pool, which was a part of the base, was related to and dependent upon his military service; otherwise, he would not have been privileged to use it.").

**[7]** Our review of the four factors reveals that appellants' claims implicate the third rationale of *Feres* — protection of military discipline. Because the situs of the alleged negligence is Luke AFB, allowing the suit to proceed would inherently require discovery of, and evaluation of, the command structure and regulations for inspecting and maintaining motorboats on the military base. Because Lt. McConnell and his colleagues were briefed on the Air Force's installation rules and regulations governing the use of the boat and were required to follow them, allowing the suit to proceed would inherently require discovery of, and evaluation of, the adequacy of the instructions, whether they were properly conveyed to Lt. McConnell and his colleagues, and whether they, as military officers, properly complied with the instructions. Because the government claims that Lt. McConnell's recreational use of the motorboat was related to his overall military mission, allowing the suit to go forward might well require a civilian court to evaluate whether the recreational use was so related and whether the recreational program met some standard of care. Our prior cases, particularly our decisions in *Bon* and *Costo*, hold that the *Feres* doctrine bars suit in a case like this because the concept of protecting military discipline is implicated.

## IV

**[8]** Finally, as in *Costo* we note that we apply the *Feres* doctrine "without relish." 248 F.3d at 869. We remain aware of the criticism that has been rightly leveled at the doctrine, but in light of the Supreme Court's failure to address the expansion of the *Feres* doctrine,[8] as a three-judge panel we remain constrained to follow our "well-worn path" of interpreting the *Feres* doctrine "to include military-sponsored recreational programs." *Id.* Accordingly, the district court's grant

---

[8]The Supreme Court denied the petition for certiorari filed in *Costo*. 534 U.S. 1078 (2002).

of summary judgment in favor of the government and against the appellants is **AFFIRMED**.

---

GOULD, Circuit Judge, concurring:

I concur in Judge Callahan's opinion which accurately reflects our prior circuit precedent and its application here. However, I am left with the concern that our precedent interpreting the scope of the *Feres* doctrine creates an injustice. The justifications for the doctrine as applied to the death of Lieutenant McConnell seem slim to me, for it is unrealistic for our precedent to suggest that dismissal of the claim here is needed to foster military discipline. In my view, and respectfully, it would be appropriate for our court en banc to reassess the scope of the *Feres* doctrine. Also, many might welcome the Supreme Court's clarification of the doctrine's application in the case of military-sponsored recreational programs.