# SUPREME COURT OF THE UNITED STATES

RYAN G. CARTER, ET AL. *v.* UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23–1281.    Decided February 24, 2025

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, dissenting from the denial of certiorari.

The Federal Tort Claims Act (FTCA or Act) makes the Federal Government liable for tort claims to the same extent as private individuals, subject to certain enumerated exceptions. 28 U. S. C. §§2674, 2680. In *Feres* v. *United States*, 340 U. S. 135 (1950), this Court created an additional, atextual exception for claims based on "injuries incident to military service." *Id.*, at 144. The Court has never articulated a coherent justification for this exception, and the lower courts for decades have struggled to apply it. The result is that courts arbitrarily deprive injured servicemembers and their families of a remedy that Congress provided them.

As I have said before, we should fix the mess that we have made. See *Clendening* v. *United States*, 598 U. S. \_\_\_ (2022) (opinion dissenting from denial of certiorari); *Doe* v. *United States*, 593 U. S. \_\_\_ (2021) (same); *Daniel* v. *United States*, 587 U. S. 1020 (2019) (same); *Lanus* v. *United States*, 570 U. S. 932 (2013) (same). Because this case cleanly presents an opportunity to overrule, or at least limit, *Feres*, I would grant the petition for certiorari.

## I

The FTCA generally makes the United States liable for suits in tort "in the same manner and to the same extent as a private individual under like circumstances." §2674. It contains a number of enumerated exceptions, several of which preclude liability for sensitive military decisions. In

particular, the Act bars claims based on "combatant activities . . . during time of war," claims "arising in a foreign country," and claims based on an employee's "execution of a statute or regulation" or performance of "a discretionary function." §§2680(a), (j), (k). But, it contains no general exception for claims by military personnel.

In its first encounter with an FTCA claim by a service-member, this Court applied the Act as written. Two brothers in the Army were driving together while on furlough when an Army truck collided with their car, injuring one and killing the other. *Brooks* v. *United States*, 337 U. S. 49, 50 (1949). When the surviving brother and the deceased brother's estate sued the United States for negligence, the Government asserted sovereign immunity, arguing that the brothers' status as servicemen took them outside the FTCA. *Ibid.* This Court disagreed, holding that the text of the FTCA was "clear," and that none of the Act's enumerated exceptions excluded petitioners' claims. *Id.*, at 51. The Court explained that it would be "absurd" to read in an implicit exception for servicemembers, because "[t]he overseas and combatant activities exceptions make . . . plain" that "Congress . . . ha[d] the servicemen in mind . . . when this statute was passed." *Ibid.* The brothers' claims could therefore proceed. *Id.*, at 54.

The following year in *Feres*, however, this Court carved out a broad new exception. The decision concerned two medical-malpractice claims regarding soldiers harmed by Army surgeons, and one negligence claim by the widow of a soldier killed during a barracks fire. 340 U. S., at 136–137. This time, the Court held that sovereign immunity barred the claims because the soldiers' "injuries" were "incident to military service." *Id.*, at 144. This fact, in the Court's view, marked a "vital distinction" from *Brooks*, where the soldiers' "injury . . . did not arise out of or in the course of military duty" because they were "on furlough." *Feres*, 340 U. S., at 146.

The Court gave three rationales for its new rule. *First*, it explained that the FTCA permits suits against the Government only to the extent that a "'private individual'" would be liable "'under like circumstances.'" *Id.*, at 141 (quoting §2674). In the military context, the Court reasoned, no such individual exists, because "no private individual has power to conscript or mobilize a private army." 340 U. S, at 141. *Second*, state law generally governs FTCA suits, and it would be irrational to subject the "'distinctively federal'" "relationship between the Government and members of its armed forces" to variations in state law. *Id.*, at 143. *Third*, servicemembers do not need a remedy under the FTCA because veterans' benefits statutes (consolidated in the present day in the Veterans' Benefits Act (VBA), 38 U. S. C. §101 *et seq*.) provides compensation for servicemembers injured while performing their duties. 340 U. S., at 144–145.

The Court abandoned each of these rationales in short order. It rejected the first rationale by holding that civilians could sue when injured by the military, even when the military is engaged in activity that no private individual is authorized to perform. *Indian Towing Co.* v. *United States*, 350 U. S. 61, 64–69 (1955). It rejected the second rationale by holding that federal prisoners could sue under the FTCA, even though doing so would subject the federal prison system to "variations in state law." *United States* v. *Muniz*, 374 U. S. 150, 161–162 (1963). And, it rejected the third rationale by holding that servicemembers not otherwise barred by *Feres* can sue under the FTCA despite being entitled to VBA benefits because "Congress ha[s] given no indication that it made the right to compensation" under the VBA a servicemember's "exclusive remedy." *United States* v. *Brown*, 348 U. S. 110, 113 (1954).

But, the Court did not abandon *Feres* itself. Instead, later decisions adopted a new rationale for its judge-created exception: that permitting suits for injuries arising out of mil-

itary service "would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *United States* v. *Shearer*, 473 U. S. 52, 59 (1985); accord, *Stencel Aero Engineering Corp.* v. *United States*, 431 U. S. 666, 671–672 (1977); *Muniz*, 374 U. S., at 162; *Brown*, 348 U. S., at 112. Thus, when determining whether *Feres* bars a suit, the key consideration is "whether the suit requires the civilian court to second-guess military decisions, and whether the suit might impair essential military discipline." *Shearer*, 473 U. S., at 57 (citation omitted). In making this shift, the Court forthrightly acknowledged that *Feres*'s original rationales were "no longer controlling." 473 U. S., at 58, n. 4.

This modified approach, focused solely on protecting "essential military discipline," *id.*, at 57, did not last either. In *United States* v. *Johnson*, 481 U. S. 681 (1987), the Court confronted whether *Feres* barred the suit of a widow of a Coast Guard pilot allegedly killed by the negligence of *civilian* air traffic controllers. 481 U. S., at 682–683. Under *Shearer*, the answer would seem to be no; the widow's suit would not call into question any *military* decisionmaking. See *Johnson*, 481 U. S., at 683–685. But, rather than accept this conclusion, the Court resurrected two of the *Feres* rationales it had previously discarded. Specifically, the Court claimed that the *Feres* doctrine rests on "*three* broad rationales": *Shearer*'s protection of military discipline, and the earlier justifications about the irrationality of subjecting the military to variations in state law and the adequacy of VBA benefits, 481 U. S., at 688–691 (emphasis added). The Court deemed these considerations, viewed together, sufficient to bar suit. *Id.*, at 691–692.

For now, *Johnson* remains this Court's last word on *Feres*.

## II

This Court should overrule *Feres*. The *Feres* doctrine has

no basis in the text of the FTCA, and its policy-based justifications make little sense. It has been almost universally condemned by judges and scholars. And, it is difficult for lower courts to apply, leading to several splits in the Courts of Appeals. At minimum, the Court should impose clear limitations on the *Feres* doctrine's scope.

## A

*Feres* is indefensible as a matter of law, and senseless as a matter of policy. Under the plain terms of the FTCA, there is no broad exception for injuries incident to military service. See 28 U. S. C. §2680. The only "rationales" currently propping the doctrine up—avoiding varying state-law standards, the adequacy of VBA benefits, and preventing judicial interference in military affairs—are naked policy considerations. *Johnson*, 481 U. S., at 688–691. Of course, "[a]s this Court has explained, 'even the most formidable' policy arguments cannot 'overcome' a clear statutory directive." *BP p.l.c.* v. *Mayor and City Council of Baltimore*, 593 U. S. 230, 245 (2021); see also *Rayonier Inc.* v. *United States*, 352 U. S. 315, 320 (1957) (holding that courts may not "read exemptions into the Act beyond those provided by Congress"). But, *Feres*'s policy rationales are hardly formidable, depriving injured servicemembers and their families of a remedy for no good reason at all.

*Feres*'s concern about avoiding variations in state law proves too much. See *Muniz*, 374 U. S., at 161–162. The Federal Government comprises many "'distinctively federal'" entities beyond the military, such as the Census Bureau and Immigration and Customs Enforcement, that are subject to a patchwork of state-law tort standards under the FTCA. *Stencel Aero*, 431 U. S., at 674–675 (Marshall, J., dissenting). If consistently applied, the uniformity rationale would thus exempt much of the Federal Government from liability, contrary to the manifest purpose of the FTCA. This Court has recognized as much, refusing to rely

on this rationale outside of claims made by servicemembers. See *Muniz*, 374 U. S., at 161–162.

Nor does the *Feres* doctrine even succeed in subjecting the military to a uniform standard of law. If military negligence injures a civilian, veteran, or servicemember outside the course of military duty, *Feres* does not bar recovery under the FTCA. See *Indian Towing*, 350 U. S., at 62, 69; *Brown*, 348 U. S., at 113; *Brooks*, 337 U. S., at 54. If the military wishes to avoid liability, it has no choice but to conform to local tort law.

Similarly, the availability of VBA benefits cannot justify *Feres*. As this Court has already recognized, nothing in the VBA or FTCA indicates that Congress meant to make VBA benefits the exclusive remedy for injured servicemembers. *Brown*, 348 U. S., at 113; *Brooks*, 337 U. S., at 53. Nor can VBA benefits make sense of the line *Feres* drew, because "the VBA compensates servicemen without regard to whether their injuries occur 'incident to service' as *Feres* defines that term." *Johnson*, 481 U. S., at 698 (Scalia, J., dissenting) (citing 38 U. S. C. §105); see, *e.g.*, *Brooks*, 337 U. S., at 53 (permitting soldiers injured on furlough to receive VBA benefits *and* recover under the FTCA). And, VBA benefits are not a reliable substitute for tort liability, since they are often "a fraction of the recovery [the servicemember] might otherwise have received." *Johnson*, 481 U. S., at 703 (Scalia, J., dissenting); see, *e.g.*, *Siddiqui* v. *United States*, 783 Fed. Appx. 484, 489 (CA6 2019) (observing that the family of the deceased servicemember received $500,000 in benefits when they could reasonably have expected a $2 million to $3 million wrongful death award); J. Wells, Comment, Providing Relief to the Victims of Military Medicine: A New Challenge to the Application of the *Feres* Doctrine in Military Medical Malpractice Cases, 32 Duquesne L. Rev. 109, 123 (1993) (Wells) ("[N]o one would seriously contend that the provisions for veterans disability payments have kept pace with the medical malpractice

award explosion").

Nor can the Court justify *Feres* on the theory that it would cause civilian courts to disrupt military discipline and decisionmaking. Through its choice of enumerated exceptions, Congress already determined which military activities are too sensitive to permit the intrusion of tort liability. See 28 U. S. C. §§2680(a), (j), (k); *supra*, at 1–2. There is no need for an additional exception to insulate military decisionmaking from judicial interference.

In any event, the *Feres* doctrine is not a rational way of protecting military discipline and decisionmaking. Whether a suit requires questioning military orders or decisionmaking usually turns on "the government's control of the *tortfeasor* rather than the victim." *Taber* v. *Maine*, 67 F. 3d 1029, 1042 (CA2 1995) (emphasis added). In other words, when a lawsuit challenges the legality of an officer's orders, the court must second-guess those orders regardless of whether the plaintiff is a soldier or a civilian. Yet, *Feres* turns on the status of the victim, barring suits by servicemembers when a "civilian" would be allowed to challenge "the same acts, by the same injurer, in the same disciplinary relationship to the government." *Taber*, 67 F. 3d, at 1042.

Moreover, "servicemen 'routinely sue their government and bring military decision-making and decision-makers into court' seeking injunctive relief." *Clendening*, 598 U. S., at \_\_\_ (opinion of THOMAS, J.) (slip op., at 4); see, *e.g.*, *Austin* v. *U. S. Navy Seals*, 595 U. S. \_\_\_ (2022) (partially leaving in place an injunction precluding the Navy from taking adverse personnel actions based on the plaintiff soldiers' "vaccination status"); *National Coalition for Men* v. *Selective Serv. System*, 593 U. S. \_\_\_ (2021) (statement of SOTOMAYOR, J., joined by Breyer and KAVANAUGH, JJ., respecting denial of certiorari) (suggesting that it may be appropriate to enjoin enforcement of the all-male draft should Congress refuse to eliminate it); *Singh* v. *Berger*, 56 F. 4th

88, 97–98, 110 (CADC 2022) (enjoining boot-camp grooming requirements that the Marine Corps deemed essential for unit cohesion because they likely violated the Religious Freedom Restoration Act). Tort suits seeking compensation for noncombat, nondiscretionary acts committed domestically are far less intrusive than many of the claims courts already entertain.

The *Feres* doctrine is an undisguised act of judicial legislation, and a poor one at that. Its purported rationales have no basis in the text or logic of the FTCA. Instead, the doctrine unjustifiably deprives the injured servicemember of a tort remedy simply "because [he] devoted his life to serving in his country's Armed Forces." *Johnson*, 481 U. S., at 703 (Scalia, J., dissenting).

## B

I am not the first to offer these critiques. The *Feres* doctrine has received "'widespread, almost universal criticism.'" *Johnson*, 481 U. S., at 700 (Scalia, J., dissenting). Concern about *Feres* has come from Members of this Court across the jurisprudential spectrum. See *Daniel*, 587 U. S. 1020 (noting vote of Ginsburg, J., to grant certiorari to limit or overrule *Feres*); *Bork* v. *Carroll*, 449 Fed. Appx. 719, 721 (CA10 2011) (majority opinion of Gorsuch, J.) (observing that *Feres* created a bar to relief "despite the FTCA's language suggesting a waiver of immunity"); *Johnson*, 481 U. S., at 703 (Scalia, J., joined by Brennan, Marshall, and Stevens, JJ., dissenting) (*Feres* is a "clearly wrong decision" that "has bred" much "unfairness and irrationality"); *Lombard* v. *United States*, 690 F. 2d 215, 233 (CADC 1982) (Ginsburg, J., concurring in part and dissenting in part) (*Feres* is "a problematic court precedent" that imposed a "limitation . . . upon remedial legislation ordered by Congress"); *Stencel Aero*, 431 U. S., at 674 (Marshall, J., dissenting) (deeming *Feres* a "judicially created exception to the waiver of sovereign immunity contained in the [FTCA]"

that should "be strictly limited"); *Peluso* v. *United States*, 414 U. S. 879 (1973) (noting votes of Douglas, Brennan, and Blackmun, JJ., to grant certiorari to consider whether to overrule *Feres*).

Lower courts and academic commentators have been equally unsparing. Since Justice Scalia in 1987 collected a long list of Circuit decisions and law-review articles attacking *Feres*, see *Johnson*, 481 U. S., at 701, n. (dissenting opinion), the criticism has continued apace. Lower courts have reiterated that *Feres*'s "reading of the FTCA was exceedingly willful, and flew directly in the face of a relatively recent statute's language." *Taber*, 67 F. 3d, at 1038. And, academic commentators have said that, "[a]t a minimum, *Feres* represented a total departure from principles of judicial restraint and deference to the political branches." J. Turley, *Pax Militaris*: The *Feres* Doctrine and the Retention of Sovereign Immunity in the Military System of Governance, 71 Geo. Wash. L. Rev. 1, 68 (2003).

When "forced to apply the *Feres* doctrine," lower courts have "frequently do[ne] so with . . . regret." *Ortiz* v. *United States ex rel. Evans Army Community Hosp.,* 786 F. 3d 817, 822–823 (CA10 2015) (collecting cases); accord, *Bowers* v. *United States*, 904 F. 2d 450, 452 (CA8 1990) (applying *Feres* as "obligated" and "with a pronounced lack of enthusiasm"). Courts have called the results "harsh," "inequitable," "counter-intuitive," "curious," "unjust," and "far removed from the doctrine's original purposes." See *Clendening* v. *United States*, 19 F. 4th 421, 431 (CA4 2021); *Costo* v. *United States*, 248 F. 3d 863, 869 (CA9 2001); *Richards* v. *United States*, 176 F. 3d 652, 657 (CA3 1999); *Cutshall* v. *United States*, 75 F. 3d 426, 429 (CA8 1996).[1] There

_____

[1] For additional Circuit decisions and academic articles leveling and noting criticism of *Feres* v. *United States*, 340 U. S. 135 (1950), after *United States* v. *Johnson* 481 U. S. 681 (1987), see, *e.g., In re Energetic Tank, Inc.*, 110 F. 4th 131, 160 (CA2 2024); *Jackson* v. *Modly*, 949 F. 3d 763, 775 (CADC 2020); *Daniel* v. *United States*, 889 F. 3d 978, 982 (CA9

is near-universal consensus that the *Feres* doctrine is wrong on the law, incoherent in justification, and unjust in practice.

C

Compounding the problem, lower courts have struggled to apply *Feres* in a consistent manner. Our case law provides "no clear-cut answer as to when a serviceman's death, injury, or loss is 'incident to service.'" L. Jayson & R. Longstreth, Handling Federal Tort Claims: Administrative and Judicial Remedies §5A.02, p. 5A–6 (2024). As a result, lower courts "have consistently wrestled with the mechanics of [the *Feres* doctrine's] application to particular facts." *Ortiz*, 786 F. 3d, at 821; see also *Costo*, 248 F. 3d, at 867 ("[W]e have reached the unhappy conclusion that the cases applying the *Feres* doctrine are irreconcilable"); *Taber*, 67 F. 3d, at 1032 ("[W]e would be less than candid if we did not admit that the *Feres* doctrine has gone off in so many different directions that it is difficult to know precisely what the doctrine means today"). Faced with almost four decades of silence from this Court on the *Feres* doctrine, lower courts have developed an array of tests for determining when it is triggered, leading to inconsistent results on similar facts.

──────────

2018); *Ritchie* v. *United States*, 733 F. 3d 871, 874 (CA9 2013); *Purcell* v. *United States*, 656 F. 3d 463, 465–466 (CA7 2011); *Regan* v. *Starcraft Marine, LLC*, 524 F. 3d 627, 633 (CA5 2008); *McConnell* v. *United States*, 478 F. 3d 1092, 1098 (CA9 2007); *Mackey* v. *United States*, 226 F. 3d 773, 777 (CA6 2000); *Day* v. *Massachusetts Air Nat. Guard*, 167 F. 3d 678, 683 (CA1 1999); *O'Neill* v. *United States*, 140 F. 3d 564, 566 (CA3 1998) (Becker, C. J., statement sur denial of petition for rehearing); *Selbe* v. *United States*, 130 F. 3d 1265, 1266 (CA7 1997); *Uhl* v. *Swanstrom*, 79 F. 3d 751, 755 (CA8 1996); *Persons* v. *United States*, 925 F. 2d 292, 299 (CA9 1991); *Appelhans* v. *United States*, 877 F. 2d 309, 313 (CA4 1989); *Loughney* v. *United States*, 839 F. 2d 186, 187, and n. 2 (CA3 1988); D. Brou, Alternatives to the Judicially Promulgated *Feres* Doctrine, 192 Mil. L. Rev. 1, 4–5 (2007); Wells 120–128; J. Tomes, *Feres* to *Chappell* to *Stanley*: Three Strikes and Servicemembers Are Out, 25 U. Rich. L. Rev. 93, 133–134 (1990).

The Courts of Appeals are split on whether and how to take into account the three policy justifications—avoiding varying state-law standards, the adequacy of VBA benefits, and preventing judicial interference in military affairs—that this Court articulated in *Johnson*. Circuit decisions have taken many different paths. Some continue to focus primarily on judicial interference, framing the inquiry as whether the "'particular sui[t] would call into question military discipline and decisionmaking.'" *Clendening*, 19 F. 4th, at 427 (CA4); see also *Ritchie* v. *United States*, 733 F. 3d 811, 874–875 (CA9 2013). Others insist that the court must examine all "three *Feres* rationales, putting no special weight on whether resolution would involve the judiciary in sensitive military affairs." *Beck* v. *United States*, 125 F. 4th 887, 891 (CA8 2025); see also *Lovely* v. *United States*, 570 F. 3d 778, 783 (CA6 2009). Still others do not consider "the presence or absence of the [three] *Feres* rationales" *at all*. *Tootle* v. *USDB Commandant*, 390 F. 3d 1280, 1282 (CA10 2004). Of those, some decisions simply ask whether the alleged injuries arose incident to service, while others have developed their own set of factors to guide that inquiry.[2] Some decisions use a hybrid standard, drawing in part on *Johnson*'s policy rationales and in part on other considerations.[3] Finally, some decisions despair of identifying a governing standard, concluding that the "'most appropriate'"

---

[2] Compare *Tootle*, 390 F. 3d, at 1282 (CA10) (framing "the relevant question" as simply "whether [the plaintiff]'s alleged injuries arose 'incident to service'"), with *Regan*, 524 F. 3d, at 637 (CA5) ("This Circuit uses a three-factor analysis for whether a service member's injury was incident to military service: (1) duty status, (2) site of injury, and (3) activity being performed").

[3] See, *e.g.*, *McConnell*, 478 F. 3d, at 1095 (CA9) (considering "four factors"—the three factors articulated in *Regan*, see n. 2, *supra*, *and* "the benefits accruing to the plaintiff because of the plaintiff's status as a service member"); *Taber* v. *Maine*, 67 F. 3d 1029, 1050 (CA2 1995) (holding that *Feres* is triggered if the plaintiff was "engaged in activities that fell within the scope of the plaintiff's military employment" *or* there were

method is simply to "'"compar[e]"'" the present case to the "'"fact patterns"'" of previous cases. *Daniel*, 889 F. 3d, at 982 (CA9); *Costo*, 248 F. 3d, at 867 (CA9).

These differing approaches have led to divergent outcomes in factually similar cases. For example, the Circuits have split on:

- whether a sexual assault by another soldier is incident to military service, compare *Doe* v. *Hagenbeck*, 870 F. 3d 36, 49–50 (CA2 2017) (yes), with *Spletstoser* v. *Hyten*, 44 F. 4th 938, 958–959 (CA9 2022) (no);

- whether injuries arising during recreational activities with military-owned equipment are incident to service, compare *Costo*, 248 F. 3d, at 864 (CA9) (yes), with *Regan*, 524 F. 3d, at 645–646 (CA5) (no);

- whether the children of servicewomen can sue for injuries sustained *in utero* from negligent prenatal care, compare *Del Rio* v. *United States*, 833 F. 2d 282, 287–288 (CA11 1987) (yes), with *Ortiz*, 786 F. 3d, at 832–833 (CA10) (no);

- whether exposure to toxic chemicals in one's on-base home is an injury incident to service, compare *Gros* v. *United States*, 232 Fed. Appx. 417, 418–419 (CA5 2007) (*per curiam*) (yes), with *Elliott* v. *United States*, 13 F. 3d 1555, 1556, 1563 (CA11 1994) (no); and

- whether the *Feres* doctrine extends to dual-status technicians, *i.e.*, civilian employees of the military required as a condition of employment to maintain membership in the military reserves, compare *Zuress* v. *Donley*, 606 F. 3d 1249, 1253–1254 (CA9 2010) (yes), with *Jentoft* v. *United States*, 450 F. 3d 1342, 1348–1349 (CA Fed. 2006) (no).

---

"unusual circumstances that would call into play the *Feres* discipline rationale").

So long as this Court refuses to revisit *Feres*, these divergences are bound to continue. At minimum, this Court should articulate some clear limiting principles on the doctrine to minimize its absurdity and allow courts to apply it in a consistent and predictable way. "Because we caused this chaos, it is our job to fix it." *Clendening*, 598 U. S., at \_\_\_ (opinion of THOMAS, J.) (slip op., at 5).

### III

The facts of this case illustrate the problems with the *Feres* doctrine. Petitioner Ryan Carter was a dual-status military technician and inactive-duty Staff Sergeant in the Air National Guard reserves. Carter suffered from a degenerative neck condition. To alleviate chronic pain caused by this condition, he underwent elective surgery at a military hospital in 2018. During surgery, Carter sustained an injury to his spinal cord that left him permanently disabled and paralyzed in all four limbs.

Following the surgery, Carter and his wife sued the United States under the FTCA, alleging that the Government is vicariously liable for its medical staff's negligence and failure to obtain informed consent. But, the Fourth Circuit held that *Feres* barred their suit because Carter "was a member of the military" being treated at a military hospital "by military doctors" at the time of his injury. 2024 WL 982282, *1 (Mar. 7, 2024).

Carter's suit should be allowed to proceed. None of the FTCA's enumerated exceptions bars an ordinary medical-malpractice suit for treatment received at a domestic hospital. See §2680. In fact, had Carter been a veteran rather than an inactive-duty reservist, he unquestionably could have filed suit for the same injuries arising from the same treatment by the same military staff at the same military hospital. See *Brown*, 348 U. S., at 112 (holding that *Feres* did not apply to a veteran suing for negligent treatment at a military hospital "after his discharge"). No command of

the FTCA—and no unique military interest—is honored by treating Carter's claim differently.

At the very least, Carter's case shows why this Court should clarify the scope of the *Feres* doctrine. Because Carter was a dual-status technician rather than a full-time soldier at the time of his injury, his case could have proceeded had it been heard in the Federal Circuit. *Jentoft*, 450 F. 3d, at 1348–1349. And, given that Carter was on inactive duty at the time of his surgery, perhaps his case also could have proceeded in a circuit that places weight on a plaintiff's duty status. See, *e.g., Regan*, 524 F. 3d, at 637 (including "duty status" as one of three factors relevant to determining "whether a service member's injury was incident to military service"). It is hard to see why an inactive-duty reservist should be treated so differently from a soldier on furlough or a veteran. Even if the Court wants to keep *Feres* in some form, I cannot see why claims with such a tenuous connection to military activity should fall within its reach.

\*    \*    \*

I hope that this Court will one day overrule *Feres*. Until then, I offer this advice to lower courts: Do not look for a principled explanation for our *Feres* case law; there is nothing to find. Instead, simply ask whether a controlling decision has held that the *Feres* doctrine barred suit under materially indistinguishable circumstances. If not, allow the suit to proceed. See *Lombard*, 690 F. 2d, at 233 (opinion of Ginsburg, J.) ("While lower courts are bound by the Supreme Court's decision in *Feres*, they are hardly obliged to extend the limitation *Feres* placed upon remedial legislation ordered by Congress").

As for this Court, we should realign our case law with the text of the FTCA. I respectfully dissent from the denial of certiorari.